UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

RIVERBAY CORPORATION,

                            Plaintiff – Counter Defendant,

        -v-

SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 32BJ,

                     Defendant – Counter Plaintiff.

----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/21/2023

22-cv-10994 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

      Petitioner Riverbay Corporation ("Petitioner") moves to remand this case to New York State Supreme Court, Bronx County, pursuant to 28 U.S.C. § 1447(c). Dkt. No. 12. For the reasons that follow, the motion is denied.

## BACKGROUND

      Petitioner filed this action in New York State Supreme Court, Bronx County, in the form of a notice of verified petition to vacate the arbitration award on December 28, 2022 ("Petition"), seeking vacatur of the arbitrator's opinion and award dated December 16, 2022. Dkt. No. 1-1. The underlying dispute grows out of a grievance filed on or about April 1, 2022, by Respondent Service Employees International Union, Local 32 BJ ("Respondent") on behalf of its member Damien Reyes ("Reyes"). *Id.* ¶ 21.

      Petitioner is a company engaged in the business of providing services to residents of Co-Op City in the Bronx, New York. *Id.* ¶ 6. Reyes was employed by Petitioner from 2016 until his discharge on April 1, 2022 and, from July 2018 until his termination, he worked as a Bulk Truck

Driver within Petitioner's Janitorial Department.  *Id.* ¶¶ 7–8, 20.  The Assistant Director of the Department of Janitorial Services was Arthur Taylor ("Taylor").  *Id.* ¶ 9.

On March 18, 2022, Reyes and Taylor had a cellphone conversation regarding a bulk pickup that Reyes was assigned to make.  *Id.* ¶¶ 10–11.  Reyes argued that the pickup could not be accomplished and Taylor proposed a solution to address Reyes's concerns.  *Id.* ¶ 12.  When Reyes was unsatisfied with Taylor's suggestion, he stated "Listen, my nigger," and proceeded to object to the assignment.  *Id.* ¶ 13.  Taylor responded, "What did you call me?" and Reyes replied, "Oh, I'm sorry.  I shouldn't have said that," or words to that effect.  *Id.* ¶ 14.  Taylor reported the incident to his supervisor, the Director of the Department of Janitorial Services, explaining that he felt very upset and disrespected, and Taylor's supervisor then reported the incident to the Director of Human Resources, Inelle T.M. Cooper ("Cooper").  *Id.* ¶¶ 16–17.  The Human Resources Department conducted an investigation and concluded that Reyes should be discharged.  *Id.* ¶ 19.  Reyes was discharged on April 1, 2022, for violation of Petitioner's Code of Conduct and the Company's Rules and Policy prohibiting discrimination and harassment.  *Id.* ¶ 20.

On or about April 1, 2022, Respondent filed a complaint on behalf of Reyes, grieving his termination.  *Id.* ¶ 21, ECF p. 125.  Petitioner and Respondent are parties to a Collective Bargaining Agreement ("CBA"), which provides for a two-step Grievance Procedure, culminating in final and binding arbitration.  *Id.* ¶¶ 2–4.  On May 23, 2022, after an informal hearing held on April 21, 2022, Cooper, the Director of Human Resources, denied Respondent's request to reverse Reyes' termination.  *Id.* at ECF p. 125.  Respondent then initiated an arbitration on behalf of Reyes.  A hearing was held on November 29, 2022, at the Riverbay Community Center in the Bronx.  *Id.* ¶¶ 22–23; *id.* at ECF p. 18.  The arbitration addressed a

single set of questions: "Was the discharge of Damien Reyes for just cause?  If not, what shall be the remedy?"  *Id.* ¶¶ 22–23; *id.* at ECF p. 18.  The Arbitrator issued her Opinion and Award (the "Award") on December 16, 2022.  *Id.* at ECF p. 18–24.  The Arbitrator found that it was "clear that Reyes' use of a racial epithet in addressing Mr. Taylor on March 18, 2022, was a shock to Mr. Taylor."  *Id.* ¶ 26.  The Arbitrator also found that Reyes used the epithet as a term of endearment, reasoning that "the reality is that black persons sometimes address their cohorts in this fashion without intending disrespect—but rather as a sign of aligned views about life experiences and shared values."  *Id.* ¶¶ 33, 35.  The Arbitrator thus ruled in favor of Reyes, determining that the discharge was not for just cause and that Reyes would be deemed to have served his one-month suspension and would be required to be reinstated to his position without backpay.  *Id.* ¶¶ 24–25.

In its Petition, Petitioner asserts that the Award: (1) violates public policy protected by Federal, New York State, and New York City law; (2) violates the express limitations on the Arbitrator's authority; and (3) is irrational and based on unsubstantiated and racially related assumptions of the Arbitrator.  *Id.* ¶ 5.  It claims that the Award violates public policy because under New York law the use of the "n word" violates Title VII and New York State and New York City law and the Award thus prohibits Petitioner from taking action that it is required to take to meet its statutory obligations to rid the workplace of discriminatory conduct.  *Id.* ¶¶ 30–32, 44.  It argues that the Award exceeds the Arbitrator's authority under Article 18, Section 4 of the Grievance Procedure in the CBA, which provides that the award "shall be limited to the application and interpretation of the [CBA], and the arbitrator shall not add to, subtract from or modify the [CBA]," because, under Article XIII of the CBA, management reserves and retains the rights "to hire[,] promote, demote, transfer, suspend, or discharge employees for just cause."

*Id.* ¶¶ 4, 38, 40, 47–48.  Article XIII states that it is understood that such management rights "may not be impaired or limited by arbitration or an arbitrator, or by any other means except by mutual agreement of the parties."  *Id.* ¶ 38.  Petitioner further argues that by finding that Reyes used a racially offensive and derogatory phrase "as a term of endearment," and then finding that there was no just cause for termination, the Arbitrator gave an irrational interpretation of the CBA.  *Id.* ¶ 51.

## PROCEDURAL HISTORY

Petitioner filed the Petition in New York State Supreme Court on December 28, 2022.  Dkt. No. 1-1.  It served the Petition on Respondent on December 30, 2022.  Dkt. No. 1 ¶ 2.  On that same date, Respondent filed a Notice of Removal in this Court, asserting that the action was a civil action over which the Court has jurisdiction pursuant to Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), because the CBA is a "contract between an employer and a labor organization representing employees in an industry affecting commerce."  *Id.* ¶¶ 11–12.

On January 27, 2023, Petitioner filed this motion to remand along with a memorandum of law in support of the motion to remand.  Dkt. Nos. 12–13.  Respondent filed an opposition brief on February 10, 2023.  Dkt. No. 14.  Petitioner has not filed a reply brief.  Respondent has also filed an answer and a counterclaim seeking to confirm and enforce the arbitration award.  Dkt. No. 9.

## DISCUSSION

Petitioner argues that the case should be remanded for absence of federal subject matter jurisdiction and under principles of abstention.  Dkt. No. 13.  It argues that subject matter jurisdiction is lacking because the Petition seeks to vindicate rights granted under New York State law and because the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, does not

4

provide independent federal jurisdiction for a petition to confirm or vacate an arbitral award. *Id.*
at 4–7. In the alternative, it argues that the case should be remanded based on principles of
*Burford* abstention because questions regarding the use of racial epithets in the workplace is an
important public policy matter that should be decided by New York State courts. *Id.* at 7–9
(quoting *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). Those arguments are without merit.

## I.     Federal Subject Matter Jurisdiction

The Federal Removal Statute, Section 1441(a) of Title 28, provides that: "Except as
otherwise expressly provided by Act of Congress, any civil action brought in a State court of
which the district courts of the United States have original jurisdiction, may be removed by the
defendant or the defendants, to the district court of the United States for the district and division
embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The presence or
absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which
provides that federal jurisdiction exists only when a federal question is presented on the face of
the plaintiff's properly pleaded complaint." *Shapnik v. Hebrew Home for the Aged at Riverdale*,
535 F. Supp. 3d 301, 310 (S.D.N.Y. 2021) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386,
392 (1987)). "'[T]he presence of even one claim 'arising under' federal law is sufficient to
satisfy the requirement that the case be within the original jurisdiction of the district court for
removal.'" *T & M Meat Fair, Inc. v. United Food & Com. Workers, Loc. 174, AFL-CIO*, 210 F.
Supp. 2d 443, 448 (S.D.N.Y. 2002) (quoting *Wisconsin Dep't of Corrections v. Schacht*, 524
U.S. 381, 386 (1998)).

A motion to remand for lack of subject matter jurisdiction may be brought at any time
while the action is pending in federal court, pursuant to 28 U.S.C. § 1447(c). The party who
removed an action from state court to federal court bears the burden of proving federal
jurisdiction. *See California Pub. Emps. Ret. Syst. v. WorldCom. Inc.*, 368 F.3d 86, 100 (2d Cir.

2004); *accord United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).  As a general matter, "there is a presumption against removal, and uncertainties tend to weigh in favor of remand." *Harraz v. EgyptAir Airlines Co.*, 2019 WL 6700946, at *2 (S.D.N.Y. Dec. 9, 2019).  "[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removability." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (cleaned up).

The Petition here is a civil action over which the district courts of the United States have original jurisdiction.  "Section 301(a) of the [LMRA], 29 U.S.C. § 185, provides subject matter jurisdiction for an action to vacate an arbitration award." *Burns Int'l Security Serv., Inc. v. United Plant Guard Wkrs. of Am., Local 537*, 47 F.3d 14, 16 (2d Cir. 1995); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Loc. 261*, 912 F.2d 608, 612 (2d Cir. 1990); *Duffy v. Legal Aid Society*, 2013 WL 541521, at *2 (S.D.N.Y. Feb. 12, 2013). Specifically, it "extends federal court subject-matter jurisdiction to all '[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . .'" *Neshgold LP v. New York Hotel & Motel Trades Council, AFL-CIO*, 2013 WL 5298332, at *3 n.4 (S.D.N.Y. Sept. 19, 2013) (quoting 29 U.S.C. § 185(a)). Respondent is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and represents employees "in an industry affecting commerce" within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a).  Dkt. No. 1 ¶ 4.  Petitioner and Respondent are parties to the CBA, which is a "contract[] between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a); *see Neshgold LP*, 2013 WL 5298332, at *3 n.4.  And the Petition challenges the Award which was entered as a

result of an arbitration commenced pursuant to the CBA to address an issue arising under the CBA. Indeed, the thrust of the Petition is that the Arbitrator violated the CBA, either by exceeding the power granted her under Article 18 of the CBA, Dkt. No. 1-1 ¶¶ 46–49, or by ignoring "clear and unambiguous language in the [CBA], including the clear language in Articles 13, 17, and 18 of the [CBA]," *id.* ¶ 51, or by "exceed[ing] her limited authority as arbitrator under the parties' [CBA] to issue a final and binding decision," *id.* ¶ 55. Those allegations form the basis of two of the specific counts. The Petition thus necessarily will call upon the Court to interpret the CBA, a paradigmatically federal function, drawing upon federal common law. *See Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456–577 (1957). It follows that federal subject matter jurisdiction lies over the Petition.

The conclusion is not altered by the Supreme Court's recent decision in *Badgerow v. Walters*, 142 S. Ct. 1310 (2022). In *Badgerow*, the Supreme Court reiterated that the FAA does not create federal subject matter jurisdiction and held that a party seeking to invoke federal jurisdiction in support of a petition to confirm or vacate an arbitral award must "identify a grant of jurisdiction, apart from [the FAA] itself, conferring 'access to a federal forum.'" *Id.* at 1316 (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009)). Moreover, *Badgerow* held, it is not sufficient that the underlying dispute being arbitrated turns upon federal law, *i.e.*, "look-through" jurisdiction. *Id.* at 1317–18. The Court also held that petitions to confirm and vacate arbitral awards that "raise claims between non-diverse parties involving state law" typically belong in state court and not federal court. *Id.* at 1321; *see Mitchell v. Frattini*, 2022 WL 17157027, at *2 (S.D.N.Y. Nov. 22, 2022) (finding absence of federal jurisdiction for petition to vacate arbitral award between non-diverse parties).

*Badgerow* does not help Petitioner here.  "Unlike the FAA or state arbitration statutes, the LMRA can be used as a basis for federal question jurisdiction over actions to compel arbitration, as well as petitions to confirm or vacate arbitration awards."  *San Jose Healthcare Sys., LP v. Stationary Engineers Loc. 39 Pension Tr. Fund*, 2022 WL 2161504, at *3 (N.D. Cal. June 15, 2022) (quoting *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 835 (9th Cir. 2004)).  The Petition asserts a basis for federal jurisdiction, independent of the FAA, that is clear on its face. It alleges that the Arbitrator violated a provision of a CBA "between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a). "Properly understood, the arbitrator's award is a 'contractual resolution of the parties' dispute.' So refusal to comply with a labor-arbitration award is itself a contract violation over which the LMRA grants jurisdiction.  Simply put, when a party moves to vacate a labor-arbitration award, the LMRA provides an independent basis for jurisdiction that's clear 'on the face of the [motion to vacate] itself.'"  *Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist. Council 91*, 43 F.4th 628, 631 (6th Cir. 2022) (cleaned up).

Petitioner also seeks an order of remand on the ground that it is seeking vacatur because reinstatement of Reyes would violate New York State's public policy against workplace discrimination.  The first count of the Petition alleges that the Arbitrator's order must be vacated because it violates public policy that makes even a single comment that is racially derogatory actionable. Dkt. No. 1-1 ¶ 44.  That argument, however, is of no avail.  Although the question whether Reyes's comment violated New York State or New York City law will require an interpretation of that law, the question of whether an alleged violation of that law should give rise to vacatur of the Arbitrator's Award is itself a federal question turning upon Section 301. *See United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 (1987).  Thus, the

fact that the question of whether the Award should be vacated under federal law may turn upon an antecedent question of whether its enforcement would give rise to a result that is inconsistent with New York State or New York City law is insufficient on its own to divest this Court of jurisdiction.[1]

## II.    *Burford* Abstention

Petitioner further argues that abstention is warranted and the case therefore must be remanded under principles of *Burford* abstention.  Dkt. No. 13 at 7–9 (quoting *Burford*, 319 U.S. 315).  Petitioner argues that "[a]t the core of [its] petition is the important public policy surrounding workplace discrimination and the use of racial epithets in the workplace" and that "New York State policy and workplace discrimination laws will be determinative in considering whether reinstatement of Mr. Reyes . . . violates public policy." *Id.* at 8.

"Abstention is a narrow exception to the generally broad duty of federal courts to exercise jurisdiction." *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 126 (2d Cir. 1995).  "Where a federal court has subject matter jurisdiction, it has a 'virtually unflagging obligation to exercise that jurisdiction,' even if an action concerning the same matter is pending in state court." *Mochary v. Bergstein*, 42 F.4th 80, 84 (2d Cir. 2022) (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986)).

The form of abstention known as *Burford* abstention "is concerned with protecting complex state administrative processes from undue federal interference." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989).  "Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere

---

[1] Moreover, even if one of the counts in the Petition alleged purely a violation of state law, the other counts allege a violation of the CBA, giving rise to federal question jurisdiction. *See Schacht*, 524 U.S. at 386–87.

with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Id.* at 361 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). "[T]he court looks to several factors to determine the applicability of *Burford* abstention, including: '[1] the degree of specificity of the state regulatory scheme, [2] the necessity of discretionary interpretation of state statutes, and [3] 'whether the subject matter of the litigation is traditionally one of state concern.'" *Planned Parenthood of Dutchess-Ulster, Inc*, 60 F.3d at 127 (quoting *Bethpage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992)).

Petitioner's invocation of *Burford* here has it backwards.[2] The Petition raises the paradigmatic federal claim, subject to adjudication in federal court. Because this case arises under Section 301 of the LMRA, any state law claims Petitioner might make here are subject to complete preemption. The Supreme Court has held that "the substantive law to apply in suits under § 301 is federal law," *Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists and Aerospace Workers*, 390 U.S. 557, 559 (1968) (quoting *Lincoln Mills*, 353 U.S. at 456–57) (holding that labor dispute governed by Section 301 was properly removable to federal court even though pleaded as a state law breach of contract claim), and that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts

---

[2] The Court assumes, without deciding, that abstention could apply to an action to vacate an arbitral award. *But see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 729 (1996) (suggesting that abstention applies only when a federal court is asked to provide some form of discretionary relief).

10

between an employer and a labor organization,'" *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983); *see also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 276 (2d Cir. 2005) (discussing preemptive force of Section 301); *Shapnik*, 535 F. Supp. 3d at 311–12 (same).  And federal courts enjoy "primacy" in deciding questions of federal law.  *Avco Corp.*, 390 U.S. at 560.  The law thus to be applied to this case is federal law based on a federal scheme of regulation.  The exercise of jurisdiction will not interfere with any state administrative process and there is no basis for *Burford* abstention.

## CONCLUSION

The motion to remand is DENIED.  The Clerk of Court is respectfully directed to close Dkt. No. 12.


SO ORDERED.

Dated: February 21, 2023
     New York, New York
                                          LEWIS J. LIMAN
                                United States District Judge