UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/31/2023
```

-------------------------------------------------------------------X
                              :

Riverbay Corporation                    :

         Plaintiff - Counterdefendant,    :

                          :          22-cv-10994 (LJL)

      -v-                      :

                          :         <u>OPINION AND ORDER</u>

Service Employees International Union,  :
Local 32BJ                   :

                          :

         Defendant - Counterclaimant.    :

                          :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Respondent-Counterclaimant Service Employees International Union, Local 32BJ

("Respondent" or "Local 32BJ") moves, pursuant to Federal Rule of Civil Procedure 56, for

summary judgment confirming and enforcing a December 16, 2022 arbitration award (the

"Award") in favor of Local 32BJ's member, Damien Reyes; ordering Petitioner-

Counterdefendant Riverbay Corporation ("Petitioner" or "Riverbay") to pay back pay to Damien

Reyes from January 9, 2023, the date following the Award that he was available to report to

work; awarding prejudgment interest on the back pay at a rate of 9% per annum; and awarding

attorneys' fees. Dkt. No. 20. Petitioner cross-moves for summary judgment granting its motion

to vacating the Award. Dkt. No. 24.[1]

---

[1] Petitioner violated Local Civil Rule 7.1 by not filing a notice of motion or order to show cause
with its memorandum of law seeking to vacate the arbitration award. Local Civil Rule 7.1(a)(1).
The Court has authority to excuse Petitioner's violation. *See Somlyo v. J. Lu-Rob Enterprises,
Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991) ("[T]he district court has the inherent power to decide
when a departure from its Local Rules should be excused or overlooked."). The Court exercises
that authority here. !

For the following reasons, Respondent's motion for summary judgment to confirm the Award is granted in part and denied in part and Petitioner's motion for summary judgment to vacate the Award is denied.  The Award is confirmed and the Court grants back pay and prejudgment interest at a rate of nine percent per annum and denies an award of attorneys' fees.  !

## BACKGROUND

Familiarity with the prior proceedings in this matter is presumed.

Petitioner is a company engaged in the business of providing services to residents of Co-Op City in the Bronx, New York.  Dkt. No. 29 ¶ 1.

Respondent and Petitioner are parties to a collective bargaining agreement ("CBA" or the "Agreement") covering multiple classifications of maintenance and ground employees working at Co-Op City in the Bronx, New York.  *Id.*  The CBA provides for a two-step Grievance Procedure, culminating in final and binding arbitration.  *Id.* ¶¶ 3–4.

The underlying dispute grows out of a grievance effective on or about April 1, 2022, by Respondent on behalf of its member Damien Reyes ("Reyes").  Dkt. No. 1-1 ¶ 21, ECF p.7. Reyes was employed by Petitioner from 2016 until his discharge on April 1, 2022 and, from July 2018 until his termination, he worked as a Bulk Truck Driver within Petitioner's Janitorial Department.  *Id.* ¶¶ 7–8, 20, ECF pp. 5–6.  The Assistant Director of the Department of Janitorial Services was Arthur Taylor ("Taylor").  *Id.* ¶ 9, ECF p. 5.

On March 18, 2022, Reyes and Taylor had a cellphone conversation regarding a bulk pickup that Reyes was assigned to make.  *Id.* ¶¶ 10–11, ECF p. 5.  Reyes argued that the pickup could not be accomplished and Taylor proposed a solution to address Reyes's concerns.  *Id.* ¶ 12, ECF p. 6.  When Reyes was unsatisfied with Taylor's suggestion, he stated "Listen, my nigger," and proceeded to object to the assignment.  *Id.* ¶ 13, ECF p. 6.  Taylor responded, "What did you call me?" and Reyes replied, "Oh, I'm sorry.  I shouldn't have said that," or words to that effect.

*Id.* ¶ 14, ECF p. 6.  Taylor reported the incident to his supervisor, the Director of the Department of Janitorial Services, explaining that he felt very upset and disrespected, and Taylor's supervisor then reported the incident to the Director of Human Resources, Inelle T.M. Cooper ("Cooper"). *Id.* ¶¶ 16–17, ECF p. 6.  The Human Resources Department conducted an investigation and concluded that Reyes should be discharged.  *Id.* ¶ 19, ECF p. 6.  Reyes was discharged on April 1, 2022, for violation of Petitioner's Code of Conduct and the Company's Rules and Policy prohibiting discrimination and harassment.  *Id.* ¶ 20, ECF pp. 6–7.

On or about April 1, 2022, Respondent filed a complaint on behalf of Reyes, grieving his termination.  *Id.* ¶ 21, ECF p.7.  On May 23, 2022, after an informal hearing held on April 21, 2022, Cooper denied Respondent's request to reverse Reyes's termination.  *Id.* at ECF p. 125. The parties then submitted to arbitration the dispute over Reyes's termination.  Dkt. No. 29 ¶ 14, ECF pp. 3–4.

A hearing was held on November 29, 2022, at the Riverbay Community Center in the Bronx.  *Id.* at ECF p.18; Dkt. No. 29 ¶ 15, ECF p. 4.  The arbitration addressed a single set of questions stipulated to by the parties: "Was the discharge of Damien Reyes for just cause?  If not, what shall be the remedy?"  Dkt. No. 29 ¶ 16, ECF p. 4; Dkt. No. 1-1 at ECF p. 18.  Both parties appeared at the hearing by counsel, were given full opportunity to present all relevant evidence, to examine and cross-examine witnesses, and to make their closing arguments.  Dkt. No. 29 ¶ 17, ECF p. 4.  Three witnesses testified at the hearing: Reyes, Taylor, and Cooper.  *Id.*

The Arbitrator issued her Opinion and Award on December 16, 2022.  Dkt. No. 25-1 (the "Award").  The Opinion and Award recites that the issue presented by the parties were: "Was the discharge of Damien Reyes for just cause?  If not, what shall be the remedy?"  Award at ECF p. 2.  It also recites that both parties appeared at the hearing by counsel, were given full opportunity

to present all relevant evidence, to examine and cross-examine witnesses, and to make their closing arguments. *Id.*

The Arbitrator found Reyes's termination was without just cause and ordered him reinstated to his position without back pay and that he be deemed to have been suspended for one month following his discharge for using impermissible language in the workplace in violation of Petitioner's Code of Conduct. *Id.* at ECF p. 8. The Award was supported by a five-page discussion. The Arbitrator found that the facts as stated in the Disciplinary Action Report were, with one exception, basically undisputed. Reyes had been employed by Riverbay since 2016 and had been employed as a Bulk Truck Driver in the corporation's Janitorial Department since 2018. *Id.* at ECF p. 3. Although he received his assignments from the department supervisor, he was in frequent contact with Taylor, the Assistant Director of the Department of Janitorial Services when he deemed his assigned bulk load pickup presented a safety hazard. *Id.* at ECF p. 4. The Arbitrator found that these safety issues were amicably resolved for the most part, but that there were a couple of incidents where issues arose between the two. *Id.* The Arbitrator found that Reyes, among the drivers, was particularly concerned about the safety hazards to which bulk drivers were subjected, and had taken a lead role, among the drivers, in bringing safety issues to the attention of management. *Id.*

With respect to the incident that gave rise to Reyes's termination, the Arbitrator found that on March 18, 2022, Reyes had contacted Taylor about a bulk pickup he was assigned to make that he believed to be a safety hazard and argued could not be undertaken. *Id.* at ECF p. 5. Reyes was "significantly agitated," and was not satisfied with Taylor's proposed solution. *Id.* Reyes began to argue, stating "Listen, my nigger." *Id.* Taylor was shocked and stated "What did

you call me?" *Id.*  To get Reyes's attention, Taylor may have asked this twice.  *Id.*  Reyes

immediately said, "Oh, I'm sorry.  I shouldn't have said that" or words to this effect.  *Id.*

The Arbitrator noted that, while Taylor continued the exchange, he testified that he was

very upset and felt disrespected beyond anything he had felt in his twenty plus years as a

supervisor.  *Id.*  The Arbitrator recited that Taylor went to his supervisor, the Director of

Janitorial Services, the next day and described the incident to him including that he was very

upset and felt disrespected, and that the Director then reported the incident to Cooper who

concluded that Reyes should be terminated.  *Id.*

The Arbitrator concluded that Reyes's use of the term "nigger" in the Riverbay

workplace was forbidden, *Id.* at ECF p. 5, and that Riverbay had the right to prohibit

discrimination and/or harassment in the workplace including racial slurs, *Id.*  However, contrary

to the finding of the Disciplinary Action Report, the Arbitrator found that Reyes had an

explanation for his use of the racial slur.  Reyes testified that he used the phrase "without

thinking and without any intention of being disrespectful, but rather as a 'term of endearment.'"

*Id.*  The Arbitrator credited that testimony and that Reyes did not intend his statement to be

derogatory, much less discriminatory or harassing or subordinate.  *Id.* at ECF p. 8.  She found

that Reyes had four years of frequent contact with Taylor, that the two conversed frequently and

sometimes daily, and that they had an amicable relationship in which Taylor invited Reyes to

contact him when he had a safety issue.  *Id.* at ECF p. 6.  Reyes's testimony that the statement

was made unconsciously was supported by the testimony from Taylor that he had to ask Reyes

twice "what did you call me," and that, even then, Reyes had to pause as he thought back on

what he had said, and then immediately apologized.  *Id.*  In asking herself why Reyes would

have made the comment, the Arbitrator credited Respondent's argument that "black persons

sometimes address their cohorts in this fashion without intended disrespect—but rather as a sign of aligned views about life experiences and shared values," and Reyes's testimony that he used the phrase with black friends, meaning no disrespect but viewing the friends as members of his cohort or group. *Id.* The Arbitrator also found from the testimony that there was a "blurring of the lines of supervision [that] may have led Mr. Reyes to believe his relationship with Mr. Taylor was so special, that Mr. Taylor was 'in his camp' so to speak—looking after Mr. Reyes's interests—as a member of Mr. Reyes's cohort might." *Id.* at ECF p. 7.

In the end, the Arbitrator concluded that Reyes's intent did not excuse his conduct—Reyes was not "entirely without fault." *Id.* The Arbitrator further found that Reyes erred and caused Taylor distress and that the likelihood that Reyes's language would be perceived as discriminatory justified Riverbay prohibiting the use of the term in the workplace. *Id.* at ECF p. 8. But his explanation did factor into the Arbitrator's "thinking about Riverbay's choice of discharge as an appropriate level of discipline." *Id.* The Arbitrator thus ruled in favor of Reyes, determining that the discharge was not for just cause and that he should be reinstated to his position but also ruled that such reinstatement should be without back pay and that he be deemed to have been suspended for a month for using impermissible language in the workplace in violation of the Code of Conduct. *Id.* Respondent requests back pay for the period Petitioner has not complied with the Award. Dkt. No. 21 at 13–14. It requests back pay retroactive to January 9, 2023, several weeks after the Award was issued, and post-award prejudgment interest on the back pay at a rate of nine percent. *Id.*

## PROCEDURAL HISTORY

Petitioner filed this action in New York State Supreme Court, Bronx County, on December 28, 2022, in the form of a notice of verified petition to vacate the arbitration award (the "Petition"). Dkt. No. 1-1. On December 30, 2022, Respondent removed the action to this

Court, asserting that the action was a civil action over which the Count has jurisdiction pursuant to Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a).  Dkt. No. 1.

On January 27, 2023, Petitioner filed a motion to remand along with a memorandum of law in support of the motion to remand.  Dkt. Nos. 12-13.  Respondent filed an opposition brief on February 10, 2023.  Dkt. No. 14.  On February 21, 2023, the Court issued an Opinion and Order denying the motion to remand.  Dkt. No. 15.

On March 30, 2023, Respondent filed this motion for summary judgment along with a memorandum of law in support, an affirmation, and a Rule 56.1 statement.  Dkt. Nos. 20-22.[2] That same day, March 30, 2023, Petitioner filed a brief in support of summary judgment granting its petition to vacate the arbitration award along with a Rule 56.1 statement and an affirmation in support of the motion.  Dkt. Nos. 23–25.  On April 20, 2023, each of Petitioner and Respondent filed a motion in opposition to the motion for summary judgment made by the other party.  Dkt. Nos. 30, 32.  In addition, Respondent filed a counterstatement to Petitioner's Rule 56.1 statement.  Dkt. No. 28.  Petitioner filed a counterstatement to Respondent's Rule 56.1 statement. Dkt. No. 29.  The parties submitted reply memoranda in further support of their motions on April 27, 2023.  Dkt. Nos. 33–34.

## LEGAL STANDARD

A federal district court has subject matter jurisdiction under Section 301 of the LMRA to confirm or vacate an arbitration award.  *See Gen. Drivers, Warehousemen & Helpers, Loc. Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963); *Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998); *Harry Hoffman Printing,*

---

[2] On April 14, 2023, Respondent filed a corrected memorandum of law, conforming the citations to the Court's Individual Practices.  Dkt. Nos. 26–27.

*Inc. v. Graphic Commc'ns, Int'l Union, Loc. 261*, 912 F.2d 608, 612 (2d Cir. 1990); *see also*

*Riverbay Corp. v. Serv. Emps. Int'l Union*, 2023 WL 2136423, at *4 (S.D.N.Y. Feb. 21, 2023).

In determining whether to grant the motion for summary judgment, the Court must

"examin[e] the moving party's submission to determine if it has met its burden of demonstrating

that no material issue of fact remains for trial." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d

95, 110 (2d Cir. 2006) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244

(2d Cir. 2004)). "If the evidence submitted in support of the summary judgment motion does not

meet the movant's burden of production, then summary judgment must be denied *even if no*

*opposing evidentiary matter is presented.*" *Id.* (quoting *1-800 Beargram Co.*, 373 F.3d at 244).

The burden on the party who seeks to confirm a labor arbitration arbitral award entered

pursuant to a collective bargaining agreement is not onerous. The court's review of "a labor

arbitration award is 'narrowly circumscribed and highly deferential.'" *ABM Indus. Groups, LLC*

*v. Int'l Union of Operating Engineers, Loc. 30, 30A, 30B*, 968 F.3d 158, 161 (2d Cir. 2020)

(quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d

527, 536 (2d Cir. 2016)); *see Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509

(2001) ("Judicial review of a labor-arbitration decision pursuant to such a [collective-bargaining]

agreement is very limited."). "Courts are not authorized to review the arbitrator's decision on

the merits despite allegations that the decision rests on factual errors or misinterprets the parties'

agreement." *Id.* (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29,

36 (1987)). The court inquires "only as to whether the arbitrator acted within the scope of his

authority as defined by the collective bargaining agreement." *ABM Industry Grps, LLC*, 968

F.3d at 161 (quoting *Nat'l Football League*, 820 F.3d at 536). It is only when the arbitrator

strays from interpretation and application of the agreement and effectively "dispense[s] his own

brand of industrial justice" that his decision may be unenforceable.  *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).  The Second Circuit has stated, "a federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law."  *Nat'l Football League*, 820 F.3d at 532.  Congress has expressed a preference for "'industrial stabilization through the collective bargaining agreement,' with particular emphasis on private arbitration of grievances."  *Id.* at 536 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578 (1960)).  It is not for the Court "to decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute."  *Id.* at 537.

## DISCUSSION

Petitioner argues that the Award should be vacated under Section 301 of the LMRA because it (1) violates public policy and (2) exceeds the authority granted the arbitrator under the collective bargaining agreement.  Dkt. No. 24 at 1.  The Court considers each in turn.

## I.      The Award Is Not in Violation of Public Policy

"[A] court may refuse to enforce an arbitrator's award under a collective bargaining agreement if the award is contrary to public policy."  *Newsday, Inc. v. Long Island Typographical Union, No. 915*, 915 F.2d 840, 844 (2d Cir. 1990) (citing *Misco*, 484 U.S. 29, 36 (1987)); *W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber, Cork, Linoleum, & Plastic Workers,* 461 U.S. 757, 766 (1983).  "A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy."  *Misco*, 484 U.S. at 42 (citing *W.R. Grace & Co.*, 461 U.S. at 766 and *Hurd v. Hodge*, 334 U.S. 24, 34–35 (1948)).  The court's review,

therefore, is narrow.  "[A] court's task in reviewing an arbitral award for possible violations of public policy is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, 'create[s][an] explicit conflict with other laws and legal precedents' and thus clearly violates an identifiable public policy." *Int'l Bd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998) (quoting *Misco,* 484 U.S. at 43).  "[T]he question of public policy is ultimately one for resolution by the courts" and is to be ascertained "by reference to . . . laws and legal precedents." *W.R. Grace & Co.*, 461 U.S. at 766.  "[A]ny such public policy must be 'explicit,' 'well defined,' and 'dominant,' [and] [i]t must be 'ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests."'" *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17,* 531 U.S. 57, 62 (2000) (internal citations omitted).  The question of remedy generally resides with the arbitrator. *Misco,* 484 U.S. at 37.  A remedy violates public policy only when it creates an "explicit conflict with other 'laws and legal precedents.'" *Id.* at 43; *see Niagara Mohawk Power Corp.*, 143 F.3d at 718 (remedy may be overturned as against public policy only when it "constitutes a clear violation of the public policy").  "[C]ourts may refuse to enforce arbitral awards only in those rare cases when enforcement of the award would be directly at odds with a well defined and dominant public policy resting on clear law and legal precedent." *Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 46 (2d Cir. 1997); *see Id.* (arbitral remedy of reinstatement upheld unless there exists a public policy against reinstatement).

Petitioner identifies the public policy at issue as that "against workplace discrimination." Dkt. No. 24 at 7–8.  There is no question that such a policy is supported "by reference to . . . laws and legal precedents." *W.R. Grace & Co.,* 461 U.S. at 766 (quoting *Muschany v. United States,*

324 U.S. 49, 66 (1945)); *see Newsday*, 915 F.2d at 844 ("The public policy against sexual

harassment in the work place is well-recognized.").  Federal, state and city law all prohibit

discrimination on the basis of race in the workplace.  *See* Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000-e, *et seq.*, ("Title VII"); New York State Human Rights Law, N.Y.

Exec. Law §§ 290, *et seq.* (the "NYSHRL"); New York City Human Rights Law, N.Y.C.

Admin. Code § 8-101, *et seq.* (the "NYCHRL").  The Second Circuit has held that the use of

racially offensive language is particularly likely to create a hostile work environment especially

when directed by a supervisor at a subordinate or presented in a physically threatening manner.

*See Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (stating

"no single act can more quickly alter the conditions of employment and create an abusive

working environment than the use of an unambiguously racial epithet such as 'nigger' by a

supervisor in the presence of his subordinates").

  The more challenging question for Petitioner is not whether Reyes's conduct violated

public policy.  It is "whether the agreement to reinstate him does so." *E. Associated Coal Corp.*,

531 U.S. at 63.  Petitioner argues that the Arbitrator violated public policy by ordering Reyes

reinstated when the Arbitrator found that Reyes used the epithet "nigger" during a work-related

exchange and his use of that term made Taylor feel "demeaned, "upset," and "disrespected."

Dkt. No. 24 at 9.  Petitioner argues that the order of reinstatement violates public policy because

it prohibits the Petitioner from taking actions designed to meet its statutory obligation of ridding

the workplace of discriminatory conduct and protecting Taylor from future unlawful abuse.  *Id.*

at 10–11.  Respondent argues that, while there may be a strong public policy against the use of a

racial epithet in the workplace, no public policy requires the employer to terminate the

employment of a perpetrator who uses a racial epithet in the workplace.  Dkt. No. 21 at 12–13.  It

argues: "An employer is free to take actions to address complaints as it sees fit, including transferring workers to different divisions, trainings, and discipline less than discharge.  The Employer's obligation is to control the workplace, not necessarily terminate every worker who runs afoul of an anti-discrimination policy."  *Id.* at 13.

Petitioner has failed to show that the Award violates public policy.  To be sure, under federal, state, and city law, an employer runs the risk of liability if it becomes aware of discriminatory conduct by a co-worker and fails to take appropriate remedial action.  *See Springs v. City of New York*, 2019 WL 1429567, at *9 (S.D.N.Y. Mar. 29, 2019) (citing *Richardson v. N.Y. State Dept. of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)); *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  Petitioner's conduct in terminating Reyes' employment may have been intended to meet its obligations under those laws and to protect Taylor "from future unlawful abuse."  Dkt. No. 24 at 10–11.  The relevant question under Section 301, however, is whether that action was necessary to satisfy Petitioner's statutory obligations, *i.e.*, whether an award requiring Petitioner to reinstate Reyes following a one-month suspension without pay would force Petitioner to take action forbidden by federal, state or city law.

Petitioner has not demonstrated that the Award creates an "explicit conflict" with any federal, state, or city law or any precedents.  *Misco,* 484 U.S. at 43.  Federal law does not require an employer to fire an employee who has made a racist comment.  To avoid liability under Title VII, the employer need only have provided a "reasonable avenue for complaint" or done something about the discrimination.  *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992).  "[N]ot every response to a complaint [need] take the form of discharge." *Id.*  An employer's response to discriminatory conduct simply needs to be "sufficiently

calculated to end the harassment." *Gonzalez v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 355 (S.D.N.Y. 2003) (quoting *Murray v. New York Univ. Coll. of Dentistry,* 57 F.3d 243, 250 (2d Cir.1995)).

Likewise, the Award also does not run afoul of the NYSHRL.  An employer is not liable for an employee's discriminatory act under state law "unless the employer became a party to it by encouraging, condoning, or approving it." *White-Barnes v. New York State Dep't of Corr. & Cmty. Supervision*, 186 N.Y.S.3d 415, 418 (3d Dep't 2023) (citation omitted); *see Lyons v. Citi Trends, Inc.*, 2023 WL 1821042, at *4 (S.D.N.Y. Feb. 8, 2023); *Gordon v. New York State Dep't of Corr. & Cmty. Supervision*, 31 N.Y.S.3d 338, 339 (4d Dep't 2016).  "Condonation may be disproved by a showing that the employer reasonably investigated a complaint . . . and took corrective action." *Swiderski v. Urb. Outfitters, Inc.*, 2017 WL 6502221, at *7 (S.D.N.Y. Dec. 18, 2017) (quoting *Selmanovic v. NYSE Grp., Inc.*, 2007 WL 4563431, at *4 (S.D.N.Y. Dec. 21, 2007)).  Such corrective action need not take the form of discharge, however, for a court to find that the employer did not condone the discriminatory conduct.  *See Totem Taxi, Inc. v. New York State Hum. Rts. Appeal Bd.*, 480 N.E.2d 1075, 1077 (N.Y. 1985) (employer not liable under NYSHRL where it suspended offending employee upon learning of the incident); *see also Jordan v. Cayuga Cnty.*, 2004 WL 437459, at *4 (N.D.N.Y. Feb. 9, 2004).

Petitioner specifically states concerns that the Award exposes Riverbay to liability under the NYCHRL.  Dkt. No. 24 at 11–13.  Under the NYCHRL, an employer may be held liable for discriminatory behavior of a non-supervisory employee if "the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action."  N.Y.C. Admin. Code § 8-107(13)(b).  Appropriate corrective action, like in the Title VII and NYSHRL context, need not be termination for an employer to

avoid liability under the NYCHRL.  *Suarez v. City of New York*, 2015 WL 1539737, at *7
(E.D.N.Y. Mar. 31, 2015).  Instead, in determining whether the corrective action is appropriate,
courts assess the "totality of the circumstances," which includes factors such as "the gravity of
the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the
employer's resources, and the nature of the work environment."  *Distasio v. Perkin Elmer Corp.*,
157 F.3d 55, 65 (2d Cir. 1998); *Feldesman v. Interstate Hotels LLC*, 2019 WL 1437576, at *11
(S.D.N.Y. Mar. 31, 2019).  It is not determinative that the employer "could have easily done
more."  *Russell v. New York Univ.*, 739 F. App'x 28, 31 (2d Cir. 2018) (quoting *Whidbee v.
Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000)).  The corrective action is
generally enough if "[e]ach complaint that was brought directly to [the employer's] attention was
dealt with quickly and in proportion to the level of seriousness of the event."  *Summa v. Hofstra
Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  Respondent has not shown that termination, as opposed
to a suspension, was required under NYCHRL or that reinstatement of Reyes, after his
suspension, would violate that law.

The Arbitrator found that Reyes had violated Riverbay's policy, suspended for him for
one month, and imposed a sanction that had the effect of depriving him of pay for the almost
nine months he was separated from work.  Dkt. No. 29 ¶¶ 35–36.  As in *Way Bakery*, Petitioner
here has cited no case "that establishes a public policy of flatly prohibiting the reinstatement of a
worker who makes a racially offensive remark."  363 F.3d at 596; *see Park Lawn Capital
Limited, Inc. v. United Steelworkers Local 13702*, 531 F. Supp. 3d 1198 (E.D. Mich. 2021)
(reduced discipline for two black workers who use "n" word in shop talk did not violate public
policy where employees were not notified that their prior use of such language could subject
them to discipline).

14

The principal case cited by Petitioner does not support its claim.  In *Newsday*, the Second Circuit affirmed Judge Glasser's order vacating an arbitration award directing the reinstatement of an employee who had been found to have engaged in multiple acts of sexual harassment, including an act that had already served as a basis of prior arbitral rulings against that individual, on grounds that the award violated public policy because it prevented the employer "from carrying out its legal duty to eliminate sexual harassment in the work place."  915 F.2d at 845. Petitioner argues that, here too, the Arbitrator's award "undermines Riverbay's obligation to take proper remedial action to such conduct" and to impose appropriate discipline.  Dkt. No. 24 at 17–18.  In the years since *Newsday* was decided in 1990, however, the Second Circuit has limited some of the decision's broad language.  In *Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41 (2d Cir. 1997), the court described *Newsday* as a case in which the employee had "a history of sexual harassment" and was "a repeat sexual offender who had been reinstated once before following a prior incident of sexual harassment with a warning by that arbitrator that any further harassing behavior shall be grounds for immediate discharge" and where "vacating the second arbitrator's reinstatement had the effect of upholding the first arbitral award."  *Id.* at 47 (citation omitted).  And in *Barnard Coll. v. Transp. Workers Union of Am., Loc. 264*, 801 F. App'x 40 (2d Cir. 2020), the Second Circuit affirmed an order denying the motion to vacate where an arbitrator had ordered the reinstatement of an employee who had engaged in a "single act" of sexual harassment."  *Id.* at 42.  The court described *Newsday* as involving an "individual who had engaged in multiple acts of sexual harassment—including acts that had already served as the basis of prior arbitral rulings against that individual."  *Id.*  The court concluded that it was "proper for the arbitrator to consider [the employee] a first-time offender; and it was well within the province of the arbitrator to conclude that Barnard's

immediate termination of [the employee's] employment for the single incident at issue was a penalty that was disproportionate." *Id.*

In the present case, Reyes was being punished for only a single act. Accordingly, *Newsday* is not controlling and the Award may not be vacated on public policy grounds.

## II.     The Arbitrator Did Not Exceed Her Authority

Petitioner also argues that the Award should be vacated because the Arbitrator exceeded the scope of her authority.

A court may vacate an arbitration award when an arbitrator has "exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Tully Contrs. Co. v Canam Steel Corp.*, 2015 WL 906128, at *5 (S.D.N.Y. Mar. 2, 2015) (quoting 9 U.S.C. § 10(a)). The proper question is whether the arbitrator "had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997) (citing *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 515–16 (2d Cir. 1991)). Although it is not directly applicable, federal courts often look to case law under Federal Arbitration Act for guidance in labor arbitration cases. *See Misco*, 484 U.S. at 41 n.9. In considering whether an arbitrator has exceeded her authority under the Federal Arbitration Act, the "sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

Petitioner's argument turns on the language of the Arbitration and the Management Rights clauses of the CBA. The Arbitration clause provides: "The Arbitrator's decision, order or award (if any) shall be limited to the application and interpretation of the Agreement, and the arbitrator shall not add to, subtract from or modify the Agreement." Dkt. No. 25-3 at ECF p. 31. The Management Rights clause of the CBA states in pertinent part as follows:

> Except to the extent expressly limited by a specific provision of this Agreement, the Employer reserves and retains all rights which existed prior to the execution of this Agreement to manage its business, operation, and the plant without limitation, the sole and exclusive rights to manage and direct the workforce and to execute the various duties, functions and responsibilities incident thereto, to determine the services to be provided; . . . to hire, promote, demote, transfer, suspend, or discharge employees for just cause . . . and to exercise such other rights as may be necessary for the proper management of the premises, except where such right has been expressly abridged or limited by a specific provision of this Agreement.
>
> It is understood and agreed that the management rights specified herein, except those rights expressly abridged or limited by a specific provision of this Agreement, may not be impaired or limited by arbitration or an arbitrator or by any other means except by mutual agreement of the parties.

*Id.* at ECF pp. 25–26.  Petitioner argues that the Arbitrator exceeded the scope of her authority for deciding for herself the gravity of Reyes's violation of the corporate policy prohibiting discrimination and harassment and concluding that there was not just cause for his termination. Dkt. No. 24 at 20.  Petitioner argues that by doing so, the Arbitrator added to, subtracted from, or modified the CBA.  *Id.*

Petitioner errs by reading the Management Rights clause in isolation and ignoring language in that clause that specifically states that it applies "[e]xcept to the extent expressly limited by a specific provision of this Agreement."  Dkt. No. 25-3 at ECF pp. 25–26.  In other words, although the clause reserves to management the right to manage its business, it does not grant management the right to demote, transfer, suspend or discharge employees to circumstances otherwise prohibited by the Agreement.  *See Int'l Bhd. of Elec. Workers, Loc. Union 43 v. Nat'l Lab. Rels. Bd.*, 9 F.4th 63, 75 (2d Cir. 2021) ("[A] broadly worded management right ordinarily will not give an employer *carte blanche* to disregard specific limits on that authority.").  Importantly, Article IV, Section 1 of the CBA states: "No regular employee who has completed his/her probationary period shall be discharged without good and just cause." Dkt. No. 25-3 at ECF p. 15.  "Just cause" is not elsewhere defined in the CBA.  Thus, "both

employer and union have granted to the arbitrator the authority to interpret the meaning of their contract's language, including such words as 'just cause.'" *E. Associated Coal Corp.,* 531 U.S. at 61.

The Award can be understood only as an application and interpretation of the CBA.  The Arbitrator "recited what she found to be the relevant provisions from the CBA and proceeded to analyze those provisions" before reaching her conclusion.  *Loc. 794, Television Broad. Studio Emps. Union v. Metro. Opera Ass'n, Inc.*, 2022 WL 992830, at *3 (S.D.N.Y. Mar. 31, 2022).  And, as in *Metropolitan Opera*, "[n]one of the Arbitrator's analysis strays from what she construed to be the pertinent provisions of the CBA."  *Id.*  The issue, as it was presented to the Arbitrator, was "Was the discharge of Damien Reyes for just cause?  If not, what shall be the remedy?"  Award at ECF p. 2.  The Award answered those questions.  The Arbitrator stated: "The discharge of Damien Reyes was not for just cause."  Award at ECF p. 8.  The Arbitrator further explained how she reached the determination that "the harsh discipline of discharge is not justified in this case."  *Id.*  Mr. Reyes "did not intend his statement to be derogatory, much less discriminatory or harassing or insubordinate."  *Id.*  Reyes used the phrase "unconsciously," and "without thinking and without any intention of being disrespectful, but rather as a 'term of endearment,' to use his words."  *Id.* at ECF p. 6.  The Court may not agree with that conclusion.  But even if the Court were convinced the Arbitrator "committed serious error [that would] not suffice to overturn [the Arbitrator's] decision."  *E. Associated Coal Corp.*, 531 U.S. at 62 (quoting *Misco*, 484 U.S. at 38).  It cannot be gainsaid that the Award draws "its essence from the contract," and at least "arguably" construes and applies the CBA.  *Misco*, 484 U.S. at 38; *see Saint Mary Home*, 116 F.3d at 44 (holding that arbitrator acted within the scope of his broad authority when the questions put before him were whether the employee was "discharged for just

cause" and if not "what shall be the remedy" and where the arbitrator explained his conclusions in terms that offered "a colorable justification for the outcome reached").

Petitioner argues that the Arbitrator exceeded the scope of her authority by deciding for herself the gravity of Reyes's violation of corporate policy and because, in the course of her decision to reinstate Reyes, she found that Reyes intended to use the racial epithet as "a term of endearment." Dkt. No. 24 at 20. But the words "terms of endearment" were Reyes's words, not the Arbitrator's, and the CBA did not give management the authority to dismiss employees for any violation of corporate policies. It gave management the authority to discharge a company employee *only* for "just cause" and entrusted to an arbitrator, in the case of disagreement regarding just cause, the interpretation and application of that term. Thus, it was to the Arbitrator and not to management to determine the "gravity" of Reyes's violation. And Petitioner has not explained how the Arbitrator could have reached a determination regarding the gravity of Reyes's offense without considering the context of that violation and evaluating the credibility of Reyes's testimony that he did not intend the words he used to be discriminatory or derogatory. That is what the Arbitrator did. *Id.* The fact that Petitioner may disagree with the Arbitrator's factual findings that Reyes was credible and that he did not intend to be derogatory or with the Arbitrator's legal conclusion that the use of the epithet as what was intended (mistakenly) to be a term of endearment would not justify discharge does not give the Court grounds to vacate the Arbitrator's Award.

## III.    Reyes's Entitlement to Back Pay

Respondent also argues that the Court should order Petitioner to pay back pay and prejudgment interest. Dkt. No. 21 at 13-14. A court's confirmation of an arbitration award would be rendered meaningless "unless the employees, as the prevailing parties, obtain the full benefit of the arbitrator's award, *as of the time it was entered.*" *Case-Hoyt Corp. v. Graphic*

*Communications Int'l. Union Loc. 503*, 975 F. Supp 231, 233 (W.D.N.Y. Aug. 13, 1997)

(emphasis added).  In order to give "full remedial effect" to an arbitrator's award, courts have

found it appropriate to award back pay and prejudgment interest for the period the employer did

not comply with the award.  *See Cliftex Corp. v. Loc. 377, New England Reg'l Joint Bd.,*

*Amalgamated Clothing & Textile Workers Union*, 625 F. Supp 903, 908 (D. Mass. 1986)

(awarding back pay, specifically "the wages that would have been earned had the award been

implemented between the time of the decision and the preliminary injunction, less any amount

earned during that period," and prejudgment interest); *United Steelworkers of Am., AFL-CIO,*

*CLC v. Dayton-Walther Corp., Muncie Div.*, 675 F. Supp. 50, 56 (S.D. Ind. 1986) (awarding

employee back pay from the date he would have returned to work had the employer complied

with the arbitration award to the date of the order).

Petitioner only opposes the award of interest and attorneys' fees.  Dkt. No. 30 at 10.

Because Petitioner has not contested that back pay should be awarded, Petitioner has abandoned

that claim.  *SEIU, Loc. 32BJ v. Dayton Beach Park No. 1 Corp.*, 2019 WL 120998, at *3

(S.D.N.Y. 2019) (citing *Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014)).  Thus, the

Court awards the back pay requested, specifically, from the date Reyes was available to report

back to work, January 9, 2023, to the date of this Opinion and Order

## IV.    Reyes's Entitlement to Interest

Petitioner contests both the award of interest and the suggested interest rate, Dkt. No. 30

at 10, while Respondent asserts that Reyes is entitled to an award of prejudgment interest at the

rate of 9% pursuant to New York C.P.L.R. § 5004, Dkt. No. 26 at 14.  The Second Circuit has

adopted a "presumption in favor of pre-judgment interest."  *Dayton Beach Park*, 2019 WL

120998, at *3 (citing *Waterside Ocean Navigant Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154

(2d Cir. 1984)).  "[C]ourts in this district have found that 'pre-judgment interest is appropriate in

an action to confirm an LMRA award when the relevant agreement indicates that the award is "final and binding."'" *1199SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park*, 2022 WL 1080707, at *5 (S.D.N.Y. Apr. 11, 2022) (quoting *1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council Inc.*, 2014 WL 840965, at *8 (S.D.N.Y. Mar. 4, 2014)).  As Article 17 of the CBA states the "[a]rbitrator's award shall be final and binding," Dkt. No. 25-3 at ECF 31, a prejudgment interest rate of nine percent per annuum is appropriate.

The next question is for what time period interest should be awarded.  "The common practice among courts within the Second Circuit is to grant interest . . . from the time of the award to the date of the judgment confirming the award."  *1199SEIU United Healthcare Workers*, 2022 WL 1080707, at *5 (quoting *N.Y.C. Dist. Council of Carpenters v. Gen-Cap Indus., Inc.*, 2012 WL 2958265, at *4 (S.D.N.Y. July 20, 2012)).  Thus, the Court awards prejudgment interest at a rate of nine percent per annum on the back pay awarded.

## V.     Attorneys' Fees

Respondent has requested the award of attorneys' fees on the grounds that Petitioner's non-compliance with the Award was "unjustified" and in "bad faith."  Dkt. No. 21 at 15.  In actions for the enforcement and confirmation of arbitral awards, courts may award attorneys' fees when the losing party has "refuse[d] to abide by an arbitrator's decision without justification."  *Int'l Chem. Workers Union v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985); *see also Trustees of New York City Dist. Council of Carpenters Pension Fund v. Architectural Metal Concept LLC*, 2022 WL 14119808, at *4 (S.D.N.Y. Oct. 22, 2022); *Abondolo v. H. & M. S. Meat Corp.*, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008); *In re Arb. Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005).  A district court may award attorneys' fees to the prevailing party when the opposing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *First*

*Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Loc. 338*, 118

F.3d 892, 898 (2d Cir. 1997) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

To ensure that the "fear of an award of attorneys' fees against them will not deter persons with

colorable claims from pursuing those claims," the Second Circuit has declined to uphold awards

under the bad-faith exception unless there is "'clear evidence' that the challenged actions 'are

entirely without color and [are taken] for reasons of harassment or delay or for other improper

purposes.'" *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)

(quoting *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982)).

Riverbay's failure to comply with the Award and to reinstate Reyes was neither

unjustified nor in bad faith. Riverbay has actively participated in this proceeding. *Cf.*

*Herrenknecht Corp. v. Best Rd.*, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding

attorney's fees to prevailing party because defendant Best Road did not participate in the

arbitration proceedings or contest the arbitration award in court proceedings); *Ceona PTE Ltd. v.*

*Bmt Giant, S.A. De C.V.*, 2016 WL 6094126, at *3 (S.D.N.Y. Oct. 19, 2016) (acknowledging

award of attorneys' fees is justified when employer has not abided by arbitrator's decision and

not responded to legal petition). Riverbay also has articulated justifications that—though

without merit—cannot be characterized as in "bad faith." Although Petitioner did not prevail in

this action, it has articulated a reasonable justification for not honoring the Award absent a court

order—its concern to remedy racist activity in the workplace. Thus, attorneys' fees will not be

awarded.

## CONCLUSION

For the foregoing reasons, the Respondent's Motion for Summary Judgment to Confirm

the Arbitration Award, Dkt. No. 20, is GRANTED IN PART AND DENIED IN PART.

Petitioner's Motion for Summary Judgment to Vacate the Arbitration Award, Dkt. No. 24, is

DENIED.

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: May 31, 2023
New York, New York

_____
LEWIS J.  LIMAN
United States District Judge